UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNALISA CHAVOYA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>　　　　　　Defendant. | Case No. 1:14-cv-00635-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Annalisa Chavoya ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental security income ("SSI") under Title XVI of the Social Security Act.[1]  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe.  The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1]     Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 8, 10).

1

# **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed a prior application for supplemental security income that was denied in an unfavorable hearing decision dated March 10, 2009. AR 22. Plaintiff's application was denied on reconsideration and she did not file an appeal with the district court. AR 22.

On August 13, 2009, Plaintiff again applied for supplemental security income, alleging disability beginning May 16, 2005. AR 22. The Commissioner initially denied the claim on November 25, 2009, and upon reconsideration on June 29, 2010. AR 22. Plaintiff filed a timely request for a hearing. On July 11, 2012, Plaintiff, represented by Sengthiene Bosavanh, testified at the hearing. AR 22. On September 20, 2012, ALJ Michael J. Haubner again denied Plaintiff's application. AR 19. On February 28, 2014, the Appeals Council denied review. AR 1. This appeal followed.

**Hearing Testimony**

ALJ Haubner held a hearing on July 11, 2012, in Fresno, California. AR 22. Plaintiff appeared and testified. AR 22. She was represented by attorney Sengthiene Bosavanh. AR 22. Impartial Vocational Expert ("VE") Jose L. Chaparro also appeared and testified. AR 22.

Plaintiff alleges disability due to her psychological impairments. Plaintiff was born on January 16, 1961, and was fifty-one years-old at the time of her hearing. AR 33. She has at least a high school education and is able to communicate in English. AR 33. Plaintiff does not have past relevant work or vocational training. AR 33. She lives with her friend and while Plaintiff does have a driver's license, she does not drive. AR 52. Typically, she uses the bus once a week for transportation. AR 52.

When asked about taking care of her own personal needs, Plaintiff indicated she does not have difficulty feeding, dressing, or bathing herself. AR 53. She cooks meals twice a week, prepares simple meals once a day, but she does not clean up after herself. AR 54, 55. Plaintiff stated she does not grocery shop, do dishes, laundry or empty the trash. AR 54. She does not

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

clean, sweep, vacuum, mop or do other housework. AR 55. Plaintiff does not make her own bed or change her sheets. AR 56. Plaintiff indicated that she leaves her apartment twice a month. AR 57. On a typical day she spends her time sleeping, but during a twenty-four hour period she reported that she will sleep two or three hours. AR 57, 71. Further, Plaintiff takes two naps a day which last approximately fifteen minutes. AR 71. She reported that she watches television once a week for twenty minutes and talks on the phone twice a month. AR 58. She does not own a computer. AR 58. While Plaintiff indicated she has not worked for approximately fifteen years, her earnings record states she earned $934 in 1999 and $792 in 2005. AR 47, 60.

Plaintiff has a diagnosed history of hepatitis C, hypothyroidism, history of obesity, hyperlipidemia, anemia, edema and renal disease on diuretics, right knee degenerative joint disease, schizoaffective disorder, major depressive disorder, and alcohol and opioid dependence in full sustained remission. AR 47, 48. Plaintiff is currently taking water pills and urinates once every hour, but if she drinks liquids she must urinate three times every hour. AR 68. She reports swelling of both knees and both feet, which increases in severity the more she stands. AR 69.

Plaintiff claims she does not grocery shop because she suffers from paranoia. AR 69. She explained that she constantly hears voices that whisper and talk, but vary in intensity from, loud to soft. AR 69, 70. In addition to the voices, Plaintiff stated that she also hears knocking every day, which ceases for only short periods of time. AR 70. Plaintiff stated that she feels fatigued and has no energy. AR 71. She experiences headaches every day that last two hours in duration. AR 73. She is currently taking prescription medication for depression and treats her headaches with ibuprofen. AR 73.

As a result of her condition, Plaintiff contends that she can only sit, walk, or stand for ten minutes at a time. AR 48, 49. The most she can lift is five pounds. AR 48. Plaintiff has difficulty concentrating and paying attention and can do so for only ten minutes at a time. AR 49. She

stated that because of pain or fatigue she must elevate her legs about five times for a total of two hours during an eight hour period. AR 49, 73. She also claims that her paranoia and depression prevent her from feeling like doing anything. AR 56.

Thereafter, the ALJ asked VE Chaparro several hypothetical questions contemplating an individual of the same age, education, language, and work background as Plaintiff. AR 61. First, the VE was asked to assume an individual that could lift and carry twenty pounds occasionally, ten pounds frequently; stand, walk, and sit about six hours out of an eight hour day; and would have unlimited ability to push and pull. AR 61. The VE testified that the entire spectrum of unskilled, sedentary and light work could be performed by an individual with those limitations. AR 61.

In a second hypothetical question, the ALJ asked the VE to consider the same individual except that this person can stand and walk up to six hours in an eight hour day with no sitting limitations and would not require the use of an assistive device; can lift and carry fifty pounds occasionally, twenty-five pounds frequently; can occasionally climb ladders or scaffolds; can climb stairs and ramps frequently; and can frequently perform other posturals. Further, this individual can reach, handle, finger, and feel continuously; can frequently do foot controls on the right, continuously on the left; can frequently climb stairs, balance, stoop, kneel; can occasionally crouch; can occasionally climb ladders and scaffolds; can frequently crawl; can continuously work at unprotected heights around moving mechanical parts, operate a motor vehicle, be around humidity, wetness, dust, fumes, odor, gases, extreme heat, and vibrations; and can frequently be around extreme cold. AR 62. The VE testified that a person with such limitations could perform the full range of unskilled, medium work such as a hand packager, laboratory equipment cleaner, and dining room attendant. AR 63.

In a third hypothetical question, the ALJ asked the VE to consider the same individual

except that this person is moderately limited in the ability to understand, remember, and carry out detailed instructions and appropriately interact with the general public. AR 63. Further, this person can complete simple, repetitive tasks with limited social contact. AR 63. The VE testified that this person could perform jobs as a hand packager, laboratory equipment cleaner, and a conveyor feeder-offbearer. AR 64.

In hypothetical 3A, the ALJ asked the VE to combine hypotheticals one and three, from which the VE testified that a person with such limitations could perform light and unskilled work in housekeeping, filling and closing machine tender, or cannery. AR 65. In hypothetical 3B, the ALJ asked the VE to combine hypotheticals two and three, from which the VE testified that a person with such limitations could perform the same jobs as listed in the answer to hypothetical three. AR 65.

In a fourth hypothetical question, the ALJ asked the VE to consider the same individual except that this person is limited to the Plaintiff's testimony. This person can lift and carry five pounds; can stand, walk, sit, and concentrate ten minutes at a time, however she needs to raise her feet two hours out of an eight hour day and avoid all bending. AR 65. The VE testified that there were no jobs which could be performed with those limitations. AR 65.

Finally, Plaintiff's attorney questioned the VE in a fifth hypothetical regarding an individual that is limited by the need to urinate once every hour. AR 74. This individual would require an unscheduled restroom break every hour for approximately five minutes every workday. AR 75. The VE testified that this person with such limitations could not work certain jobs, such as a production or assembly line position, but such limitations would not affect the other aforementioned jobs. AR 76. Plaintiff's attorney also posed to the VE an individual that is limited by the need to urinate three times an hour after drinking liquids. AR 76. This individual would require three unscheduled five minute restroom breaks after lunch each workday. AR 76. The VE

testified that there were no jobs which could be performed with those limitations. AR 77.

**Medical Record**

The entire medical record was reviewed by the Court. AR 356-691. The medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 23-34. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since August 13, 2009. AR 24. The ALJ identified Plaintiff's diagnosis of hepatitis C, hypothyroidism, hyperlipidemia, history of headaches by report, history of anemia, edema and renal disease on diuretics, right knee degenerative joint disease, schizoaffective disorder, major depressive disorder, and history of alcohol and opioid dependence in full sustained remission as severe impairments. AR 24. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 25.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry fifty pounds occasionally and twenty-five pounds frequently; to stand and/or walk for a total of six hours and sit for six hours in an eight-hour workday; to climb ramps and stairs frequently; to operate foot controls frequently on the right and continually on the left; and to crouch occasionally and crawl frequently, but she is limited to frequent exposure to extreme cold. AR 26. Mentally, the claimant is able to perform simple, repetitive tasks with limited, "i.e., at least occasional" public contact. AR 26. The ALJ noted that on the date the application was filed Plaintiff was forty-eight years-old, which is defined as a younger individual, but that she has changed age categories to closely approaching advanced age. AR 33. He also noted that Plaintiff has at least a high school education and is able

to communicate in English. AR 33. Further, her transferability of jobs skills is not an issue because she does not have past relevant work; however, based on Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded that Plaintiff could perform a significant number of jobs that exist in the national economy. AR 33, 34. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 35.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 2002).

## **DISABILITY STANDARD**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of no less than twelve months.

42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant bears the burden of proof to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In her opening brief, Plaintiff contends that the ALJ erred by relying solely on the opinion of a non-examining physician. Plaintiff argues that this did not constitute substantial evidence to determine Plaintiff's RFC. (Doc. 16 at 7).

## DISCUSSION[3]

**1.   The ALJ Properly Considered the Entire Medical Record**

Plaintiff challenges the ALJ's disability finding for failing to properly evaluate the physician evidence. (Doc. 16 at 7). Specifically, Plaintiff contends that the ALJ improperly relied on nonexamining physician Dr. Tashjian's opinion to assess Plaintiff's mental limitations. (Doc. 16 at 7). The Commissioner contends however that the ALJ considered all evidence, including Dr. Tashjian's opinion, and properly assessed Plaintiff's mental limitations based on substantial evidence. (Doc. 19 at 6).

**A.   Legal Standards**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining physicians).  As a general rule, a treating physician's opinion carries more weight than an

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

8

examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 945 F.3d 625 (9th Cir. 2007). *See also*, 20 C.F.R. § 416.927(c)(1)-(2). The Commissioner may not reject the opinion of either an examining physician or a treating physician without specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). Further, the opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984).

Non-examining State agency physicians, psychologists and other medical consultants are qualified experts in the Social Security disability programs, and as such the ALJ is required to consider and weigh any findings of the individual's RFC as opinions in the record. 20 C.F.R. § 416.927(e)(2)(i); *see* SSR 96-6p. The ALJ is responsible for assessing a claimant's RFC and is not bound by findings made by State agency physicians, psychologists and other medical consultants. 20 C.F.R. § 416.927(e)(2)(i); *see* Social Security Ruling (SSR) 96-6p. However, the ALJ must explain in his decision the weight given to each opinion. 20 C.F.R. § 416.927(e)(2)(ii).

When considering the findings of State agency physicians, psychologists and other medical consultants the ALJ will consider specified factors in determining the weight they will be given. *Id*. Those factors include the amount of "supporting evidence in the case record"; the degree of "supporting explanation the medical or psychological consultant provides"; and the consistency of the medical opinion with "the record as a whole." *Id*. at § 416.927(c)(4),(e)(2)(ii). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the non-examining physician, include the specialty of the physician providing the opinion; the "[l]ength of the treatment relationship and the frequency of examination"; the "[n]ature and extent

of the treatment relationship;" and any other factors, such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id*. at § 416.927(c)(2)(i)-(ii),(3)-(6). In any event, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas*, 278 F.3d at 957.

### B. The ALJ Correctly Weighed the Medical Evidence

Plaintiff argues the ALJ did not attach appropriate weight to the opinion of Dr. Tashjian. The Court disagrees. The ALJ reviewed the entire medical record and reasonably gave the greatest weight to nonexamining physician Dr. Tashjian's opinion in determining Plaintiff's mental RFC. AR 29-31. This independent physician's opinion was consistent with the medical record, which showed mild objective findings and conservative treatment. AR 31.

Most notably, because there is no treating physician opinion in the record, the ALJ relied on the opinions of nonexamining physicians Drs. Tashjian, Pancho, and Kerns to assess Plaintiff's mental limitations.

#### i. Dr. Tashjian

On November 12, 2009, Dr. Tashjian performed a review of Plaintiff's medical record and provided a mental RFC assessment. AR 486-499. After reviewing the medical record, Dr. Tashjian found Plaintiff moderately limited in her ability to understand, remember, and carry out detailed instructions and to interact appropriately with the general public. AR 497-498. He concluded that Plaintiff "[c]an complete simple repetitive tasks with limited social contact." AR 499.

With respect to Dr. Tashjian's opinion, ALJ Haubner found as follows:

> The mental limitations set forth above are consistent with the opinion of R. Tashjian, M.D., who reviewed the record for the State agency. He opined that the

claimant was moderately limited in her ability to perform detailed tasks and to interact appropriately with the general public, but had no other mental limitations. I find his opinion is consistent with the mental health treatment evidence and is, thus, given substantial weight.

AR 29.

### ii.   Dr. Kerns

On June 8, 2010, Dr. Kerns performed a review of Plaintiff's medical record and provided a mental RFC assessment. AR 533-34. After reviewing the medical record, including the reports of Drs. Pancho and Tashjian, Dr. Kerns adopted Dr. Tashjian's prior mental RFC assessment. AR 533.

### iv.   Analysis

The ALJ found that Plaintiff retained the mental RFC for simple, repetitive tasks with limited, i.e., at least occasional public contact. AR 26. In so finding, the ALJ afforded the opinions of Dr. Tashjian "substantial weight." AR 29. Under SSR 96–6p, "the opinions of State agency medical" physicians "can be given weight only insofar as they are supported by evidence in the case record," considering factors such as consistency with the record and explanation for the opinion.

In reviewing the medical evidence, the ALJ first noted that Plaintiff saw a case manager at Fresno County Behavioral Health in February 2008. AR 29. Her individual rehab progress notes indicate that she was diagnosed with major depressive disorder, single episode, severe without psychotic features. AR 466. At that time, Plaintiff told the case manager that she did not need group therapy, but that she just wanted to maintain her medication. AR 466.

In March 2008, Plaintiff saw examining physician Dr. Altagracia Otero. AR 29. In this exam, Plaintiff reported hearing voices and taking Risperdal and Desipramine for the previous three or four years. AR 477. Dr. Otero diagnosed Plaintiff with schizoaffective disorder, depressive type and prescribed Lexapro and discontinued Desipramine. AR 477. During an

11

appointment in June of 2008, Plaintiff told Dr. Otero that she was still hearing voices though not as strong. AR 473. Plaintiff reported feeling sluggish and that her legs were swelling. AR 473. Dr. Otero reported that Plaintiff was doing well overall, she felt less sad, but still had low energy. AR 473. Dr. Otero diagnosed depression due to hypothyroidism and asked Plaintiff to call her with the outcome of laboratory testing. AR 473. Plaintiff saw Dr. Otero every two months for examinations and medication refills. AR 467-478. The ALJ noted that during that time Plaintiff's mental status examinations were within normal limits at each visit, except that she continued to report hearing whispering voices, which were "very mild" by her February 2009 examination. AR 30, 467-478.

Further, the ALJ noted that beginning in September of 2009, Plaintiff began seeing examining physician Dr. Evelyn Aquino-Caro. AR 30. Dr. Aquino-Caro noted that Plaintiff's schizoaffective disorder depressive type was better and her mental status examination was within normal limits. AR 514. During an examination in December of 2009, Plaintiff reported that she had no side effects from her medication, but that she still heard voices. AR 516. In July of 2010, Dr. Aquino-Caro evaluated that Plaintiff had improved in response to medication. AR 581. Plaintiff denied having auditory or visual hallucinations and reported she was fine with medication and wanted to continue. AR 581. At this examination, Dr. Aquino-Caro assessed Plaintiff's Global Assessment Functioning at 65, which as the ALJ noted, indicated mild symptoms or that she was "generally functioning pretty well." AR 30, AR 581. In October of 2010, Dr. Aquino-Caro noted that Plaintiff reported feeling good, she was coherent and pleasant, and she had walked for exercise. AR 579. Further, the ALJ noted that during that time Plaintiff's mental status exam was within normal limits. AR 30, 579, 581.

The ALJ noted that in March of 2011, Plaintiff started seeing nurse practitioner Cecelia Salazar for medication management and progress assessments. AR 30, 573. During that time,

Plaintiff reported auditory and visual hallucinations, paranoid thoughts in large crowds, confusion, increased anxiety and depression, and mood changes. AR 576-578. In April of 2011, at an appointment for a medication refill, nurse practitioner Salazar reported that Plaintiff's depression had improved and her insight and judgment were normal, but she still reported auditory hallucinations. AR. 574.

The ALJ noted that an annual physical exam form submitted in April of 2011, by the BAART Program revealed that Plaintiff was first admitted to the program in May of 2007, for opioid dependence. AR 30, 564.

The ALJ noted that Plaintiff was reassessed for county services with an examining physician in August 2011. AR 30, 567-573. At this assessment, Plaintiff reported increased symptoms including disturbed sleep with nightmares, loss of appetite with unintended weight loss, extreme depression, auditory hallucinations, and fatigue. AR 30, 567-573. Plaintiff also reported hearing whispering, someone calling her name, knocking at the door, people talking about her and following her, and that she received messages from the television. AR 570. The ALJ noted that while Plaintiff voiced that she had a bad memory, the clinician from the initial assessment reported she had an intact memory. AR 30, 571. Further, a psychiatric note dated April, 26, 2011, stated that Plaintiff's cognition was normal. AR 571. The clinician diagnosed Plaintiff with major depressive disorder, recurrent, severe, and with psychotic features. AR 572. The clinician assessed her current Global Assessment Functioning at 42, which indicated major impairment in several areas, but placed her functioning at sixty-five for the past year. AR 572. However, the clinician left Plaintiff on "medication only" status. AR 572.

Finally, the ALJ noted that Plaintiff's recent treatment evidence states that Plaintiff still reports ongoing audio hallucinations, paranoia, mood swings, anxiety, depression with crying spells, lack of energy and motivation, poor concentration, and impaired memory. AR 31, 611.

However, in a physical assessment from April of 2012, examining physician Dr. Wagner described Plaintiff as a "very pleasant lady who provides a good history." AR 32, 651.

From the assessment of the medical record, the ALJ concluded that he had sufficient evidence to determine that Plaintiff's symptoms remained generally stable until March of 2011, when Plaintiff reported increased symptoms, but that there was no evidence to show an event that would have caused the worsened symptoms. AR 31. The ALJ also noted that Plaintiff's treatment evidence showed that she did not attend individual or group therapy, and she did well on medication alone, which produced no side effects. AR 31.

Here, the objective medical evidence supports the nonexamining physicians' assessments and weighs in favor of reliance on Dr. Tashjian's opinion. Consistency with the record as a whole is a legitimate basis for determining the weight to be afforded an opinion. *See Orn*, 495 F.3d at 631. Further, the ALJ provided specific examples from the record that support Dr. Tashjian's opinions. *See* AR 29-31. Additionally, Plaintiff's assessment reports reflected conservative treatment with mild objective medical findings, and the ALJ correctly noted that the evidence did not show the sort of intense treatment regimen that one would expect to find for a totally disabled person, given the very significant mental limitations claimed by Plaintiff. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). Such an interpretation was within the province of the ALJ and was consistent with non-examining physicians' opinions that Plaintiff could perform simple, repetitive tasks.

Contrary to Plaintiff's argument, substantial evidence supports the ALJ's decision to give substantial weight to Dr. Tashjian's opinion because that opinion is consistent with other evidence in the record. *See Andrews*, 53 F.3d at 1041. This includes the opinions of other non-examining physicians, Plaintiff's daily activities and mental status exam findings, and evidence

that Plaintiff had received only conservative treatment. With no contrary medical opinion regarding Plaintiff's mental impairments, the ALJ was entitled to rely on the evidence of the nonexamining physicians. While the evidence may be subject to alternate interpretations, the Court may not simply substitute the ALJ's opinion. The ALJ's interpretation of the record is entitled to deference. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record"). The ALJ's treatment of Dr. Tashjian's opinion is not erroneous, is supported by the record, and therefore must be affirmed. *See Thomas*, 278 F.3d at 954. Accordingly, the Court will not reverse or remand the ALJ's decision.

## CONCLUSION

Based on the foregoing, the Court finds that ALJ Haubner's RFC decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Annalisa Chavoya.

IT IS SO ORDERED.

Dated:   **August 11, 2015**          /s/ *Barbara A. McAuliffe*
                                     UNITED STATES MAGISTRATE JUDGE